**In re STOLLER'S, INC., Debtor.**

**STOLLER'S, INC., Plaintiff,**

**v.**

**PEOPLES TRUST BANK, Defendant–Counterclaimant,**

**v.**

**STOLLER'S, INC., Ronald W. Stoller and Joanne R. Stoller, Counter–defendants.**

**Bankruptcy No. 82–10491. Adv. No. 82–1100.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Nov. 1, 1988.

Howard B. Sandler and Terry L. Cornelius, Fort Wayne, Ind., for Stoller's, Inc., Ronald W. Stoller, and Joanne R. Stoller.

Grant F. Shipley, and Gilmore S. Haynie, Fort Wayne, Ind., for Peoples Trust Bank (now Summit Bank).

## ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

On July 1, 1987, Peoples Trust Bank, now known as Summit Bank ("Summit Bank"), the defendant-counterclaimant in this adversary proceeding, filed its Motion to Reconsider, Alter or Amend Judgment. On July 2, 1987, the plaintiff and counter-defendant Stoller's, Inc.[1] along with counter-defendants Ronald W. Stoller and Joanne R. Stoller filed their Motion to Alter or Amend Judgment. This court held a hearing on the motions on April 6, 1988, and took the matters under advisement on April 18, 1988.

*Background* [2]

On June 23, 1987, following a five-day trial in this matter the court entered its order holding that Summit Bank did not overreach its rights as a secured creditor in disposing of the debtor's property. In the order the court found, based on its indepen-

---

1. Stoller's, Inc. is also the debtor in this case.

2. Prior to filing its petition in bankruptcy, Stoller's, Inc. sued Summit Bank in Allen County State Court. Summit Bank counterclaimed against Stoller's, Inc. and against Mr. and Mrs. Stoller, personally, as guarantors for the obligation involved in the suit. Later, the entire suit was removed to the Bankruptcy Court at the request of Summit Bank.

dent review of the facts and the legal propositions raised by those facts, that Summit Bank conducted the auction of the debtor's inventory in a commercially reasonable manner and rejected the debtor's assertion that the sale constituted a fraudulent transfer under 11 U.S.C. § 548. The court entered a judgment in favor of Summit Bank against Stoller's, Inc. and Ronald W. Stoller and Joanne R. Stoller, jointly and severally in the principal amount of $198,-464.25 and denied Summit Bank's claim for interest. The court further determined that the debtor was entitled to a set-off against the judgment in the amount of $10,904.00 for inventory which was damaged in transit to the auction thereby reducing the judgment and claim of Summit Bank to $187,560.25.

The counter-defendants, Stoller's, Inc., Ronald W. Stoller and Joanne R. Stoller (collectively "counter-defendants"), in their Motion to Alter or Amend Judgment urge the court to discharge them from further liability to Summit Bank, to award them money damages for the losses caused by Summit Bank and to specifically state its findings of fact and conclusions of law in support of the court's order. The counter-defendants first submit that the court merely made conclusions of fact and law in its order and failed to make specific findings of fact as required by Fed.R.Civ.P. 52. As a result of this alleged error the counter-defendants assert that the court found Summit Bank's auction of the debtor's inventory to be a commercially reasonable sale when in fact it was not. The counter-defendants further claim that the auction sale is presumptively fraudulent under 11 U.S.C. § 548 due to the price received for the debtor's inventory and request that this court amend its judgment accordingly.

Summit Bank in turn requests that this court reconsider the denial of Summit Bank's claim for interest since the court found that the debtor was indebted to Summit Bank as of the date of bankruptcy, since the debtor's first report of operations shows that the debtor has inventory in excess of the debtor's obligation to Summit Bank and since pursuant to the debtor's plan of reorganization the debtor is re-quired to pay interest to Summit Bank at 2% over prime subject only to the outcome of this adversary proceeding. Summit Bank asserts that inasmuch as the debtor's plan does not propose to impair Summit Bank's claim, this court's disallowance of post-petition interest under 11 U.S.C. § 506(b) was erroneous. Summit Bank further submits, based upon its prior agreement with the counter-defendants as evidenced in the promissory notes and security agreement placed in evidence in this matter, that it is entitled to attorneys' fees under 11 U.S.C. § 506(b).

Summit Bank also asserts that the court's order incorrectly provided that interest and attorneys' fees due Summit Bank from Ronald W. Stoller and Joanne R. Stoller, guarantors of the debtor's obligation to Summit Bank, abated during the bankruptcy proceedings. Summit Bank argues that while the debtor's filing for Chapter 11 bankruptcy may abate the accrual of interest with respect to the debtor's liability to Summit Bank, the bankruptcy filing has no effect whatsoever upon the Stollers' obligation to pay interest and attorneys' fees as provided in the notes and security agreement. Finally, Summit Bank asks that this court clarify its order with respect to post-judgment interest. Summit Bank notes that the total amount of its attorneys' fees with respect to this matter is $55,690.20 and that interest through July 18, 1987, totals $165,304.70.

*Discussion and Decision*

1. *Findings of fact in the earlier order*

■ Fed.R.Civ.P. 52, as applicable to adversary proceedings in bankruptcy pursuant to Bankr.R. 7052, provides in relevant part:

(a) *Effect.* In all actions tried upon the facts without a jury ..., the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; .... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clear-

ly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.... It will be sufficient if the findings of fact and conclusions of law ... appear in an opinion or memorandum of decision filed by the court....

This section requires judges, when conducting a case without a jury to set out findings of fact and conclusions of law in order to provide appellate courts with a clear basis for review and to assist the court in making its initial judgment. *Bartsh v. Northwest Airlines, Inc.*, 831 F.2d 1297, 1304 (7th Cir.1987).

A court's "findings are adequate if they are sufficiently comprehensive to disclose the steps by which the trial court reached its ultimate conclusion on factual issues." *Id.* (citing *Lodges 743 and 1746, International Association of Machinists and Aerospace Workers, AFL–CIO v. United Aircraft Corporation*, 534 F.2d 422, 433 (2d Cir.1975), *cert. denied*, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976)). A court, however, "need not indulge in exegetics, or parse or declaim every fact and nuance and hypothesis." *Id.* (quoting *Monarch Beverage Co., Inc. v. Tyfield Importers, Inc.*, 823 F.2d 1187, 1192 (7th Cir.1987) (citations omitted)). Rather, the judge should make factual findings with regard to the critical issues which form the basis of its decision. *Id.* at 1306.

A court's factual findings are reviewable on a clearly erroneous standard. *E.E.O.C. v. Sears, Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir.1988). In other words, the court's factual determinations are only to be reversed if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," i.e. that "the trial judge's interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)) and *Ratliff v. City of Milwaukee*, 795 F.2d 612, 617 (7th Cir. 1986)).

In this case the counter-defendants assert that this court failed to make proper findings of fact with respect to the auction conducted by Summit Bank. The counter-defendants point to a sentence on page nine of this court's previous order and claim that the court merely concluded that Summit Bank conducted the auction in a public and professional manner without finding specific facts with regard to the issue. Counter-defendants apparently ignore the rest of the court's eleven-page order in making this argument. In the previous pages of the order the court stated several particular factual findings concerning Summit Bank's conduct with respect to the auction.

■ This court found[3] in its order of June 23, 1987 that Summit Bank chose to proceed with an auction sale of the debtor's inventory only after allowing the Stollers to attempt to sell the merchandise themselves. Order of June 23, 1987 ("Order") at 3. The court further determined that liquidating inventory was a commercially acceptable practice of disposing of property which also was permitted by the debtor's leasehold interest in its Coliseum Boulevard store. Order at 8 and 4. The court indicated that the parties agreed an auction should take place and agreed upon the time and location of the sale, that when a flood occurred the parties further agreed that the auction would take place elsewhere, and that the parties selected auctioneers who advertised the auction through color brochures, direct-mail flyers, newspaper inserts and commercial time through local radio and television stations. Order at 4.

The court noted in its Order that while the auction was open to the public and was conducted in a professional manner, the

---

3. The court acknowledges that it did not label its factual findings in the June 23, 1987 as "findings of fact." The court does not believe, however, that such labeling is required by Fed. R.Civ.P. 52(a). The court made specific findings of fact and set them forth as facts in the pages of its order.

turnout was low and returns at the auction did not meet the parties' expectations. Order at 9. The court noted that several different factors could have caused the low turnout and returns at the auction. Order at 5. The court further specifically found that Summit Bank acted in accordance with Indiana law and the agreements it had with the debtor. Order at 10. Hence, upon considering all of these facts, this court held that the auction was commercially reasonable and that Summit Bank did not overreach its rights as a secured creditor in disposing of the debtor's property at the auction. Order at 9 and 1.

The court determines that these conclusions are supported by the evidence presented in the case and by the factual findings set forth in the Order. While the findings could have been more complete, they are not "implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence" but plausible and supported by the weight of the evidence. Moreover, as Fed.R.Civ.P. 52(a) does not require a court to label its factual findings, but merely to find them "specially," this court believes it has fulfilled its obligations with respect to the rule. Accordingly, this court declines to alter or amend the portion of its order which concludes that the auction of the debtor's inventory was commercially reasonable and that Summit Bank acted within the realm of its rights.

2. *Presumptive fraud under 11 U.S.C. § 548*

The counter-defendants further assert that this court should amend its order and find that the auction sale conducted by Summit Bank is presumptively fraudulent due to the price received for the debtor's inventory. 11 U.S.C. § 548 provides in relevant part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

11 U.S.C.A. § 548 (West Supp.1988). In this case the debtor, Stoller's Inc., filed its petition under Chapter 11 of the Bankruptcy Code on May 19, 1982. The sale of the debtor's inventory took place on April 30, May 1, and May 2, 1982, just prior to the filing of the debtor's petition. Section 548 accordingly is applicable to the transfer in question since it occurred within one year prior to the date of the filing of the debtor's petition.

In the Order this court considered both § 548 and the cases presented by the counter-defendants holding that a transfer is presumptively fraudulent if it is for less than 70% of the fair market value. Order at 9. The court, upon finding that the auction sale was commercially reasonable, concluded that although the auction failed to produce as much as the parties had hoped, Summit Bank should not be held accountable for a fraudulent transfer in this instance under § 548. Order at 9–10. The court indicated that the 70% standard is unworkable with regard to a public auction at which price is often affected by other factors such as the time and place of the sale and the number of bids received and solicited. *Id.* (citing *Hall v. Owen County State Bank*, 175 Ind.App. 150, 370 N.E.2d 918, 930 (1977)). The court determined that holding Summit Bank accountable for a fraudulent transfer would sanction it for following the provisions of the Uniform Commercial Code. *Id.* (citing *Hall*, 370 N.E.2d at 929).

On August 25, 1988, after this court issued its Order in this case, the United States Court of Appeals for the Seventh Circuit issued its decision in *Bundles v. Baker (In re Bundles)*, 856 F.2d 815 (7th Cir.1988). In *Bundles*, the Court of Appeals addressed the question of whether the sale price at a regularly conducted,

noncollusive foreclosure sale could be presumed to be a reasonably equivalent value within the meaning of § 548(a)(2)(A). While the facts of *Bundles* may be distinguished from the facts herein,[4] this court determines that reexamination of the portion of its Order addressing § 548 is appropriate in light of *Bundles.*

In *Bundles* the court held that the sale price at a regularly conducted noncollusive foreclosure sale cannot automatically be deemed to provide a reasonably equivalent value within the meaning of § 548(a)(2)(A). The court further indicated that a "simple comparison of the sale price to the fair market value" is inadequate. At 824. Rather, reasonable equivalence within the meaning of § 548 depends on all of the facts in the case. *Id.* Ultimately, a court must focus its attention upon "the fair market value as affected by the fact of foreclosure." At 824.

■ Under the *Bundles* analysis the bankruptcy court therefore must examine the sale in light of the totality of circumstances to determine "whether the procedures employed were calculated not only to secure for the mortgagee the value of its interest but also to return to the debtor-mortgagor his equity in the property," "whether there was a fair appraisal of the property, whether the property was advertised widely, and whether competitive bidding was encouraged." *Id.* The court must look to all of the relevant economic factors which may have affected a particular sale as well as the sale price in order to determine whether the transaction meets the § 548 standard of reasonably equivalent value. *Id.*

The *Bundles* decision being so recent, counter-defendants did not have opportunity to address the decision in their arguments to this court. They argue that this

court inappropriately relied upon *Hall v. Owen County State Bank,* 175 Ind.App. 150, 370 N.E.2d 918 (1977), in its Order. The counter-defendants posit that *Hall* does not stand for the proposition that a court may consider different factors when examining whether a public sale as opposed to a private sale is commercially reasonable. This court does not dispute that the *Hall* case involved a private sale. The court, however, cited *Hall* as an example of a case in which an Indiana court expressed its view that the price received in a transaction is not dispositive in determining whether a sale is commercially reasonable. Rather, a court must consider all of the circumstances of the case. In this respect the court believes *Hall* is consistent with *Bundles.*

■ Upon reconsideration, the court notes that it failed to make a specific finding in its Order as to whether the debtor received a reasonably equivalent value in exchange for the inventory sold at the auction as required by § 548(a)(2)(A). Instead, the court concluded based upon the facts and circumstances of the case that the sale was commercially reasonable. In light of *Bundles* the court determines that this finding alone is insufficient to satisfy the strictures of § 548. The court therefore turns to the facts surrounding the auction in order to determine whether the debtor received the reasonably equivalent value of its inventory.

■ In the Order this court noted that the amount received for the debtor's inventory at the auction and the related discount sale was low. The court, however, upon considering all of the facts surrounding the auction determined that the sale was commercially reasonable and that Summit Bank was within its rights in conducting

---

4. *Bundles* involved the sheriff's sale of the debtor's residence upon the foreclosure of the mortgage rather than the auction sale of the debtor's inventory upon its default under a note as in this case. Furthermore, the mortgagee in *Bundles* initiated its foreclosure action under Indiana law; whereas, in our case the parties themselves arranged for the public auction of the debtor's inventory. Additionally, the parties in *Bundles* stipulated to the value of the debtor's

residence after each having independent appraisals conducted. In our case, though, the parties have never come to an agreement as to the actual value of the property. They failed to obtain professional appraisals of the debtor's property before it was sold. Hence, contrary to the situation in *Bundles* this court is left to guess at what the value of the property might have been when it was sold.

the sale. The basic facts upon which the court relied in making these determinations are listed in the Order and may be summarized from page two through five of the Order as follows:

1. In January, 1982, the debtor was delinquent in its payments on the promissory note with Summit Bank.

2. The debtor had a negative net worth and was operating with a monthly loss of approximately $20,500.00 in February, 1982.

3. Summit Bank gave the debtor an opportunity to attempt to sell its inventory at a two-week progressive discount sale.

4. The debtor was unable to generate sufficient funds to reduce the indebtedness at the progressive sale.

5. Summit Bank gave Ronald Stoller the opportunity to raise $150,000.00 to be applied to the indebtedness.

6. Mr. Stoller was unable to raise the funds agreed upon.

7. The parties agreed that the inventory would be sold at an auction sale.

8. The parties agreed to change the location of the sale following a flood.

9. The parties consulted a professional auctioneer who advertised the auction through color brochures, direct-mail flyers, newspaper inserts and commercial time on local radio and television stations and who performed the auction itself.

10. The witnesses had differing opinions as to the reasons for the low sales.

Order at 2–5.

The court, upon reexamining these findings of fact, determines that they are sufficient from which to conclude that the debtor received a reasonably equivalent value in return for its inventory. Notably, the court in the Order considered the identical factors which the Court of Appeals found to be relevant in determining reasonable equivalence in *Bundles*. The court considered the fact that the debtor was losing money monthly thereby requiring Summit Bank to take immediate action to preserve its security, the parties' agreement to have an auction sale, the low amount which the parties received for the property at the auction, the sale itself and the manner in which it was conducted, the number of registered bidders, the time and place of the sale, advertisement for the sale as well as the amount, value and content of the debtor's inventory insofar as could be ascertained.

The court finds, as the Court of Appeals did in *Bundles*, that the value of the property sold is an important factor in determining whether the debtor received a reasonably equivalent value for its inventory. The court notes, though, that unlike a dispute involving real estate in which independent appraisals of the property may be obtained after the sale and used to estimate the fair market value of the property at the time of the sale, this court is left to surmise what the true market value of the property was at the time of the sale. The parties themselves had difficulty ascertaining the correct inventory and its value in part due to the debtor's own failure to provide complete and realistic itemizations of its property and in part due to the fact that neither party obtained appraisals of the inventory prior to the auction.

The debtor claimed at trial, based on its records and Mr. Stoller's testimony, that inventory with a book or cost value of $292,000.00 and a fair market value of $750,614.81 was assembled for sale. Summit Bank, however, submitted that the cost value of the debtor's inventory according to the debtor's records was $272,486.98 at the time of the auction and that this amount was somewhat distorted due to the fact that the debtor had made adjustments on its books to the cost value of the property. Though this court believes that $750,614.81 may have been the debtor's usual markup price for the inventory assembled for the auction, the court finds it difficult to believe that the actual fair market value of the property was $750,614.81 in light of the other relevant factors surrounding the sale.

The court finds particularly convincing the fact that the debtor was unable to sell the inventory at its own inventory reduction sale, that the auctioneer advertised widely for the sale, that over 800 bidders registered for the sale and the auctioneer's

testimony that the unique character of the debtor's inventory affected the outcome of the auction. In the end Summit Bank received gross receipts of $123,003.69 from the auction and, after paying expenses of $42,878.64 and the auctioneer's 10% commission of $12,300.00, received $67,825.05 to apply to the debtor's note.[5]

The parties acted reasonably in attempting to obtain the highest value they could for the debtor's inventory both for the benefit of the debtor and in order to secure Summit Bank's interest in the inventory. Moreover, they explored and experimented with various methods of selling the debtor's unique products. In the end they employed professional auctioneers who advertised widely and conducted a commercially reasonable sale of the debtor's property. The court therefore finds that the debtor received a reasonably equivalent value for its inventory. The court believes that its review and evaluation of the facts along with its application of § 548 are consistent with the analysis the Court of Appeals set forth in *Bundles*. The court accordingly alters in part the rationale upon which its Order is based and finds that the debtor is not entitled to avoid the sale of its inventory pursuant to § 548(a) because it received a reasonably equivalent value for the inventory.

### 3. *Allowance of post-petition interest and attorneys' fees*

■ In the Order this court entered judgment in favor of Summit Bank in the amount of $187,560.25 but denied Summit Bank's request for post-petition interest because Summit Bank failed to show pursuant to 11 U.S.C. § 506(b) that it holds the position of an oversecured creditor with respect to the debtor's liability. Summit Bank asserts that contrary to this court's finding, it did present evidence to the court showing that it held an allowed claim and was oversecured with respect to the debtor's obligation. The debtor in turn argues that the value of the debtor's collateral at the time of the commencement of the bankruptcy case is unknown and that it is therefore impossible to determine whether Summit Bank was oversecured under § 506(b).

As this court's analysis of whether the debtor received a reasonably equivalent value reveals, the value of the debtor's inventory at the time of the auction is unknown. Moreover, at trial the parties presented no evidence of the value of the inventory which remained at the date of the bankruptcy filing, the crucial time in the § 506(b) valuation. Summit Bank argues that the court should rely upon the figure listed in the debtor's first bi-weekly operating report in valuing the remaining collateral. This court, however, believes that such reliance would be misplaced, especially in light of the sale itself which evidences that the collateral probably was worth less than either party anticipated. The court accordingly concludes, as it did in the Order, that Summit Bank is not entitled to post-petition interest and attorneys' fees with respect to the debtor because there has been no showing that the Bank is oversecured and therefore entitled to interest under 11 U.S.C. § 506(b).

■ Summit Bank further argues that it is entitled to post-petition interest and attorneys' fees from Mr. and Mrs. Stoller as guarantors of the debtor's note, since their obligation is not abated by these bankruptcy proceedings. 11 U.S.C. § 524(e), while not directly addressing this question, sheds light on the effect of a debtor's bankruptcy upon co-debtors and guarantors. The section states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." As the legislative history explains, "[s]ubsection [e] provides the discharge of the debtor does not affect co-debtors or guarantors." S. Rept. No. 95–989 to accompany S. 2266, 95th Cong., 2d Sess. 80–81 (1978), U.S.Code Cong. & Admin.News p. 5787, 5867.

In view of the import of this section, i.e. bankruptcy proceedings do not affect the liabilities of co-debtors and guarantors, the

---

**5.** The debtor listed the value of the unsold inventory as $290,147.00 in its first bi-weekly report of operations filed with this court.

court agrees Mr. and Mrs. Stoller's independent obligation to Summit Bank is not affected by the debtor's bankruptcy. *See also Union Carbide Corporation v. Newboles,* 686 F.2d 593, 595 (7th Cir.1982) (discussing the effect of discharge upon guarantors under 11 U.S.C. § 524(e) and concluding "[t]he import of the [the section] is that the mechanics of administering the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract to relieve co-debtors of the bankrupt of their liabilities." (citation omitted)). *Cf. In re Hersch,* 84 B.R. 430, 431 (Bankr. E.D.Va.1988) (stating that creditor was not entitled to recover post-petition interest and attorneys' fees from one who merely had pledged property as collateral for the debtor's obligation and was not personally liable for the debt). The court therefore determines that Mr. and Mrs. Stoller are liable for post-petition interest and attorneys' fees as allowed by the terms of their guarantee.

## CONCLUSION

WHEREFORE, the court grants counter-defendants' Motion to Alter or Amend Judgment in part and finds that although the court fulfilled its obligation to make findings of fact "specially" pursuant to Fed.R.Civ.P. 52, it failed to make a specific conclusion with respect to whether the debtor received a reasonably equivalent value for its inventory as required by 11 U.S.C. § 548(a). The court concludes upon reconsidering the facts set forth in the Order in light of the *Bundles* case that the debtor received a reasonably equivalent value for its inventory at the auction.

The court further denies Summit Bank's motion to reconsider, alter or amend that portion of the Order disallowing post-petition interest and attorneys' fees with respect to the debtor and grants the motion insofar as it applies to Mr. and Mrs. Stoller, finding that they are liable for post-petition interest and attorneys' fees to the extent of their agreement with Summit Bank. The court orders that a hearing shall be held on December 7, 1988, at 8:30 a.m., in the Federal Building, Room 2127, 1300 S. Harrison Street, Fort Wayne, Indiana, at which time the court will consider the appropriate amount of interest and attorneys' fees to be awarded Summit Bank. It is

SO ORDERED.