**In re EL PASO REFINING, INC., Debtor.**

**Bankruptcy No. 93–31277.**

United States Bankruptcy Court, W.D. Texas, El Paso Division.

Feb. 7, 1996.

Bernard R. Given II, Mounce & Galatzan, El Paso, Texas, for Debtor.

R. Glen Ayers, Jr., Vinson & Elkins L.L.P., Washington, D.C., for Scurlock Permian Corporation.

### Order on Debtor's Objection to Proof of Claim

LEIF M. CLARK, Bankruptcy Judge.

**CAME ON** for consideration the objection to the claim of Scurlock Permian Corporation ("Scurlock") by the Debtor El Paso Refining, Inc. ("INC."). Scurlock's claim is based upon an unconditional continuing guaranty (the "Guaranty") executed by the Debtor in favor of Scurlock's predecessor in interest, Permian Operating Limited Partnership.

Pursuant to the Guaranty the Debtor guaranteed payment of loans made by Scurlock to El Paso Refinery L.P. ("L.P."), a limited partnership of which INC. is the sole general partner. L.P. filed for bankruptcy relief in October, 1992 and INC. filed for bankruptcy relief in October, 1993.

The issues presented by the Debtor's objection are 1) whether INC. is liable for interest accruals on the guaranteed obligation from the date of the L.P. filing up until the date of the INC. filing; 2) whether 11 U.S.C. § 723(c) poses a bar to Scurlock's claim against INC.; and 3) whether the guaranteed obligation has in some way already been satisfied.

### Interest Accruals After the L.P. Filing

■ The Trustee relies upon *In re Hart Ski Mfg. Inc.*, 7 B.R. 465, 469 (Bankr. D.Minn.1980) for the proposition that a guarantor is not liable for interest accruing after the bankruptcy filing of the primary obligor. Scurlock, argues that the instant case is distinguishable, because unlike the guarantor in *Hart*, the Guaranty creates primary liability for INC and expressly includes "interest" in the definition of "Guaranteed Obligations." *See*, Guaranty at ¶¶ 1 & 2. Specifically, the Guaranty states that INC. is primarily liable for the "Guaranteed Obligations" which "mean all obligation, liabilities, and sums (including prepayments, deposits, payments, principal, *interest*, court costs, attorneys fees, and other sums) *due and/or owing or to become due and/or owing by El Paso [L.P.] to [Scurlock]* under and by reason of the following arrangements, obligations, indebtedness, loans, notes, loan agreements...." Guaranty at ¶ 1. (italics added).

The dispositive issue, therefore, is whether post-petition interest is or was due and/or owing by L.P. to Scurlock. The *Hart* Court would answer that question in the negative. *Id.* ("[The primary obligor], under § 502(b)(2), could not owe [the creditor] any interest since such interest would not accrue until ... after the petition was filed...."). This court must disagree. Section 502(b)(2) only prevents unmatured interest from becoming an *allowed claim* against the debtor's *estate*. Although unmatured interest cannot be collected from the debtor's estate, section 502(b)(2) does not toll the *accrual* of unmatured interest. *See, In re Heron, Burchette, Ruckert & Rothwell*, 148 B.R. 660, 679 (Bankr.D.C.1992). Thus the obligation to pay interest *vis-a-vis* a guarantor is not tolled or eliminated by operation of section 502(b)(2).

■ Moreover, section 524(e) provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). As the legislative history explains, "[s]ubsection [e] provides the discharge of the debtor does not affect co-debtors or guarantors." S.REPT. No. 95–989 to accompany S. 2266, 95th Cong., 2d Sess 80–81 (1978), U.S.CODE & ADMIN.NEWS p. 5787, 5867. The independent obligation of INC. on the Guaranty is therefore unaffected by the bankruptcy filing of L.P. *See also, In re Keene Corp.*, 162 B.R. 935 (Bankr.S.D.N.Y.1994); *In re Heron*, 148 B.R. at 679; *In re Stoller's Inc.*, 93 B.R. 628, 635–36 (Bankr.N.D.Ind.1988). INC. was not released from its obligation to pay interest accruing after L.P. filed its petition.

### Applicability of § 723(c)

■ The Debtor argues that 11 U.S.C. 723(c) precludes Scurlock from having a claim against the INC. estate. Section 723(c) provides:

Notwithstanding section 728(c) of this title, the trustee has a claim against the estate of each *general partner in such partnership* that is a debtor in a case under this title for the full amount of all claims of creditors allowed in the case concerning such partnership. Notwithstanding section 502 of this title, *there shall not be allowed* in such partners case a claim against such partner on which both such partner and such partnership are liable except to any extent that such claim is secured only by property of such partner and not by property of such partnership. The claim of the trustee under this subsection is entitled to distribution in such partner's case under section 726(a) of this title

the same as any other claim of a kind specified in such section.

11 U.S.C. § 723(c) (emphasis added).

Section 723(c) was drafted in order to overrule the inequities of the "jingle rule." Under the jingle rule, partnerships assets were first distributed to partnership creditors, while each partner's assets were first distributed to that partner's creditors. It was only after fully satisfying either the partner's or the partnership's own creditors that any distributions would be made to the creditors of the other entity. Because a general partner is equally liable for the obligations of the partnership as he is his own obligations, Congress drafted § 723 to provide that when a partner enters bankruptcy the unsatisfied partnership's creditors share in the partner's estate at the same level as the partner's own creditor's. In other words, under § 723 unsatisfied partnership creditors do not have to stand in line until the partner's creditors have been fully satisfied before sharing in the partner's estate.

Section 723(c) represents the mechanism by which this is accomplished. Under subsection (c) the partnership trustee is allowed to bring a claim against the partner's estate for the entire amount of unsatisfied claims against the partnership. In order to prevent double recovery of claims, only the partnership trustee may bring a claim against the partner's estate for an unsatisfied claim against the partnership.

In the instant case, the L.P. trustee's claim against INC. for the entire amount of unsatisfied claims against L.P. cannot include the Scurlock claim against L.P. Scurlock settled its claim with the L.P. estate and thus for purposes of § 723 there is no unsatisfied portion. Because there is no longer a claim which the L.P. trustee may assert on Scur-

lock's behalf, Scurlock's claim for the post-settlement deficiency on the guaranteed obligation does not pose a danger of double recovery.[1] The court therefore holds that 11 U.S.C. § 723 does not bar Scurlock's claim on the Guaranty against INC.

## Satisfaction of the Guaranteed Obligations

The Debtor argues that pursuant to the INC. plan of reorganization, Scurlock has been fully satisfied and has no claim against INC. The Debtor states that "INC.'s Plan, confirmed by this court, provides, pursuant to 11 U.S.C. § 723, that INC. will pay, on a pro rata basis, all those claims not liquidated in the partnership Chapter 7 case." In this context, the term "liquidated" means "paid and settled." Debtor's Supplemental Brief at 7.

The Debtor's argument is somewhat hard to follow since the Debtor does not cite the court to where in the plan it provides that INC. will pay all the claims that are "not liquidated," nor was the court able to discover such language. However the INC. plan does expressly classify the Scurlock claim as a class 7 claim. Class 7 of the INC. plan provides:

> Scurlock's claim arises in connection with the Debtor's guaranty of the obligations owing to Scurlock by the Partnership. The allowed claim, if any, of Scurlock will be paid on a pro rata basis with all other allowed claims against the Debtor from those monies retained in the Liquidating Trust, *and will be paid at such time as all claims against the Partnership are liquidated by the court.*

INC.'s Plan at 18–19. (emphasis added) It is clear to the court that in this context, the term liquidated was solely intended to mean

---

1. This opinion does not disagree with that of Professor Kennedy that a creditor may not prosecute a claim against a partner-guarantor when there is still some unsatisfied portion of the claim against the partnership. *See, Kennedy, Partnership and Partners under the Bankruptcy Code: Claims and Distributions,* 40 WASH. & LEE LAW REV. (1983) at 70–71. To illustrate with numbers, if a creditor does not settle with a partnership on the creditor's $1,000 claim but instead receives a 50% payout from the partnership estate, then even though the creditor obtained a separate

guaranty against the partner, it is likely that the partnership trustee alone has the ability to claim the deficiency ($500) against the partner. However, if the partner's guaranty allows the creditor to settle with the partnership without waiving his rights against the partner, then the creditor may settle with the partnership for $500, and then assert his own claim for the $500 deficiency (based on the guaranty) directly against the partner. Either way there is not double payment. It is simply a matter of who has standing to prosecute the $500 claim.

ascertained, determined, or become a sum certain. The plan only prescribes when the Scurlock claim becomes eligible to be paid. It does nothing to modify the legal relationship between INC. and Scurlock.

■ The Debtor next argues that the Guaranteed Obligations have been satisfied pursuant to the settlement agreement between Scurlock and L.P. On May 18, 1995 this court entered an order authorizing the Joint Motion for Compromise of Controversy signed by L.P. and Scurlock (the "Settlement"). The Settlement resolved all pending and threatened litigation and all claims whether asserted or not (except for the appeal of the Amended Final Judgment) between L.P. and Scurlock. Pursuant to the Settlement, L.P. agreed to dismiss, with prejudice, all pending litigation against Scurlock and further covenanted to not bring any threatened, but as yet not pending litigation. For its part, Scurlock agreed to tender $6,000,000 to the L.P. estate, and to release L.P. from any liability on all claims Scurlock may have against L.P., including the Guaranteed Obligations. (Scurlock had filed a partially secured claim in the approximate amount of $38.9 million).

■ In general, the release of a primary obligor also releases the guarantor. *Holcombe v. Solinger & Sons Co.*, 238 F.2d 495, 499 (5th Cir.1956). However, as Scurlock points out, the Guaranty specifically authorizes Scurlock to release any obligor, including L.P. without impairing their ability to seek payment from INC.[2] Moreover, the Guaranty is a guaranty of payment, rather than just collection. Guaranty at ¶ 5. A guaranty of payment creates direct and primary liability for the guarantor. Because the guarantor of payment is directly and primarily liable, there is no requirement that the creditor take action against the primary obligor as a condition precedent to the guar-

antor's liability. *Hartnett v. Adams & Holmes Mort. Co.*, 539 S.W.2d 181, 183 (Tex. Civ.App.—Texarkana 1976, no writ). Therefore, the release of L.P. in and of itself, had no effect on INC.'s liability for the Guaranteed Obligations.

■ This is not the end of the inquiry however. Although Scurlock had every right to release L.P. and seek to repayment solely from INC., Scurlock does not have a right to be paid once by L.P. (and therefore release L.P.'s liability), and then seek to be paid again by INC. The difficulty in this case is determining whether Scurlock has in fact been paid by L.P. For instance, if instead of dismissing its suit against Scurlock, L.P. simply paid Scurlock x dollars in return for Scurlock's release of L.P., then the amount of INC.'s remaining liability for the Guaranteed Obligations would be easy to calculate. (*i.e.* the total Guaranteed Obligations − x). However, L.P. did not pay a sum certain to INC. It is the value of that foregone suit that is essential for the proper determination of this case.

The Debtor argues that the suit must have been worth at least the value of the Guaranteed Obligations (*i.e.* x = full payment), since in return for the suit's dismissal, Scurlock released its claim against L.P. and tendered $6,000,000 to L.P. The court has insufficient evidence to make such a finding, as it is just as possible that the value of the dismissed suit was precisely the $6,000,000 Scurlock paid for it, and that Scurlock simply decided it would be easier to seek repayment of the Guaranteed Obligations from INC. (*i.e.* x = 0). The extent to which the underlying obligation has been paid is a question of fact. *See e.g., Asociacion De Azucareros De Guatemala v. United States National Bank*, 423 F.2d 638, 642 (9th Cir.1970).

---

**2.** The Guarantor hereby specifically acknowledges and agrees that Permian may at any time, and from time to time, at its discretion and with or without notice to, or consideration or consent from, any party ..., (b) release, sell, or otherwise realize upon any collateral or other security for the Guaranteed Obligations, or (c) release any party liable on the Guaranteed Obligations, including El Paso [L.P.].... Any of such actions may be taken without impairing or diminishing the obligations of the Guarantor hereunder. The liability of the Guarantor shall not be impaired or reduced by [Scurlock's] failure, refusal or neglect to collect the Guaranteed Obligations from El Paso [L.P.], or to proceed against any party or to enforce or preserve any security of guaranty for the Guaranteed Obligations, or by loss or subordination of any liability, collateral or other guaranty.... Guaranty at ¶ 4.

The Seventh Circuit was faced with precisely the same scenario in *Central Soya Co. Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939 (7th Cir.1982). This court is persuaded that the *Central Soya* reasoning is sound and should be applied in the instant case. The guaranty in *Central Soya* "recited that it was to remain in effect until all indebtedness arising from the [underlying obligation] was paid off by the [obligor], and that no settlement, compromise, release, modification, or other disposition of any of that indebtedness would impair the guaranty." *Id.* at 940. The primary obligor, alleging the plaintiff's product was defective, refused to pay the underlying obligation. *Id.* at 941. The plaintiff responded by bringing suit against the primary obligor, joining the guarantor as codefendant. *Id.* The primary obligor counterclaimed for damages caused by the plaintiff's allegedly defective product. The dispute between the primary obligor and the plaintiff was settled before trial by the mutual release of each party's claim. *Id.* However, just as in the instant case, the plaintiff still asserted its right to recover against the guarantor.

The parties then took substantially similar positions to those taken by INC. and Scurlock here. The plaintiff asserted that it was simply exercising its unconditional right to release the primary obligor and still seek payment via the guarantor, while the guarantor claimed that the underlying obligation had already been paid by the primary obligor.[3] *Id.* However, the Seventh Circuit found that "the value of the counterclaim is a factual question to be determined at trial ...," and remanded with instructions to decide that issue. *Id.* at 942.

 In the instant matter, this court simply has not been presented with any evidence with which to decide the value of L.P.'s foregone suit against Scurlock. For that reason the court must reset the Debtor's objection to Scurlock's claim for hearing in order to take evidence relevant to the amount, if any, that L.P. has already paid on the Guaranteed Obligations. The difficulty of course is to find a way to estimate the value of L.P.'s suit against Scurlock, or more precisely the value to Scurlock of that claim being dropped, without trying the case that was settled. To that end this court is also persuaded that the Seventh Circuit's formulation of the parties' respective burdens is applicable to the instant matter.

> Since discharge of the underlying debt is an affirmative defense of the guarantor, and the burden of proof is therefore on him, it is clear that he must present some evidence of the value of the thing he claims was used to discharge the debt. But we think his initial burden of production is satisfied by submitting a copy of a counterclaim [in this case L.P.'s suit against Scurlock] for an amount greater than the debt plus a settlement agreement showing that the counterclaim was dismissed in consideration of the dismissal of the obligee's [Scurlock's] action for the debt against the obligor [L.P.]. *This proof establishes a reasonable probability of at least partial discharge.* The burden of production then shifts to the obligee to show that the expected value of the counterclaim—what the counterclaimant [L.P.] realistically could have expected to get from the oblig[ee] *sic* if the case had gone to trial—was less than the amount of the debt, and if so how much less. The burden of persuasion of course remains on the guarantor throughout.

*Id.* at 943–94. (emphasis added).

For the foregoing reasons this matter is hereby set for further hearing on the <u>13th</u> day of <u>March</u> 1996, at 1:30 p.m. to take evidence in the fashion suggested in *Central Soya.*

So **ORDERED.**

---

**3.** The *Central Soya* court noted that payment need not be in cash but could be made in kind. *Id.* at 942. The alleged payment in *Central Soya* (as in our case) was the promise to drop a lawsuit. *Id.* The court further noted that a promise "is a form of payment, and depending on how much it is worth it could fully satisfy a debt." *Id.*