DUNCAN, Circuit Judge,
dissenting:
As the bankruptcy court succinctly stated in an order summarily affirmed by the district court, the debtors here proffer no authority “for the proposition that a non-debtor guarantor is exempt from liability to pay interest accruing after the petition date of the debtor-primary obligor” under 11 U.S.C. § 502(b)(2). Nat'l Energy & Gas Transmission, Inc. v. Liberty Elec. Power, LLC (In re Nat’l Energy & Gas Transmission, Inc.), No. 03-03104, at *6 (Bankr.D. Md. June 27, 2005) (emphasis added). Because the majority advances no support for its conclusion that bankruptcy law governs the contractual relationship between a creditor and a non-debtor guarantor — and ample authority exists to the contrary — I respectfully dissent.
As the majority explains, an arbitration panel awarded Liberty $140 million plus approximately $17 million in interest accrued after the debtors’ bankruptcy petition had been filed. Liberty collected $140 million from GTN, which was the maximum amount for which GTN could be liable under the terms of its guarantee. Liberty characterized GTN’s payment as first, a payment of the $17 million interest, and next, a payment of part of the $140 million principal.
Liberty continued to assert its claim in bankruptcy against the debtors for the full $140 million, recognizing, however, that it could not collect more than the approximately $17 million needed to satisfy the debt. In Liberty’s view, this $17 million represented principal for which the debtors remained jointly and severally liable, even though they had filed for bankruptcy.[1]
Proper analysis of Liberty’s claim begins with the basic principle of contract law that Liberty is entitled to be paid in full, including interest, by its jointly and severally liable debtors. When one or more debtors file a bankruptcy petition, as here, it is undisputable that § 502(b)(2) bars a creditor from recovering interest not yet accrued as of the date of the bankruptcy petition against such a debtor. See Majority Op. at 301-03. However, it is also well-settled that § 502(b)(2) has no impact on the accrual of unmatured interest against non-debtors, including non-debtor guarantors. See, e.g., Bruning v. United States, 376 U.S. 358, 362 n. 4, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964) (explaining that claims do not “los[e] their interest-bearing quality” in bankruptcy, but that post-petition interest is disallowed as a “rule of distribution”); Kielisch v. Educ. Credit Mgmt Corp. (In re Kielisch), 258 F.3d 315, 323 (4th Cir.2001) (“Section 502 bars creditors from making claims from the bankruptcy estate for unmatured interest,” but “does not purport to limit the liability on those claims, i.e., ‘debts.’ ”); In re El Paso Refining, Inc., 192 B.R. 144, *305 146 (Bankr.W.D.Tex.1996) (holding that § 502(b)(2) only bars “unmatured interest from becoming an allowed claim against the debtor’s [bankruptcy] estate” and that “the obligation to pay interest vis-a-vis a guarantor is not tolled or eliminated by operation of section 502(b)(2)” (emphasis omitted)).
The majority intermingles these independent principles to arrive at its holding: that the $17 million that Liberty seeks to recover from ET Power represents “disallowed post-petition interest no matter how Liberty chooses to classify it.” Majority Op. at 302. This approach, however, has the effect of limiting the non-debtor guarantor’s liability for interest accruing after the debtor’s bankruptcy petition. That is, the majority would have the bar to recovery of interest from the debtor swallow the accrual of interest on the debt across all parties liable for it. There is simply nothing in the Bankruptcy Code, applicable case law, the relevant guarantee agreement, or nonbankruptcy law to support the jettisoning of basic contract law principles in favor of an expansive reading of § 502(b)(2).[2]
In fact, the majority’s approach actually seems to run counter to another section of the Bankruptcy Code. Section 524(e) provides that the “discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.” See also El Paso, 192 B.R. at 146 (holding that § 524(e) mandated that the independent obligations of a guarantor were Unaffected by the bankruptcy of the principal obligor); Stoller’s, Inc. v. Peoples Trust Bank (In re Stoller’s, Inc.), 93 B.R. 628, 635-36 (Bankr.N.D.Ind.1998) (holding guarantors liable for post-petition interest). The majority’s holding appears to expressly violate § 524(e) by allowing the bankruptcy filing of the debtors to dictate how Liberty accounts for its contractual payment from GTN, or, in other words, allowing the “discharge of a debt of the debtor [to] affect the liability of [GTN] on ... such debt,” § 524(e).
Furthermore, in contrast to the majority’s contention, I do not believe that a creditor’s receipt of payment from a non-debtor guarantor implicates either of the purposes of § 502(b)(2): (1) avoiding “unfairness as between competing creditors” and (2) minimizing the “administrative inconvenience” that repeated recomputation of interest requires, Bruning, 376 U.S. at 362, 84 S.Ct. 906. With respect to the first, I fail to see the unfairness in the fact that Liberty bargained, outside of bankruptcy, for a guarantee of payment. That other creditors may not have secured such a guarantee, and therefore might ultimately recover proportionally less than Liberty, strikes me as no injustice. Second, even *306 the debtors do not argue that the bankruptcy court’s order below would require burdensome recomputation of interest, as it specifies the allowed amount of Liberty’s claim as determined in the arbitration proceeding.
Therefore, because neither bankruptcy law nor the contract governing Liberty’s relationship with the non-debtor guarantor GTN limits Liberty’s right to allocate its recovery from GTN in any manner that it wishes, I would affirm the district court.

. As the majority notes, only Liberty’s claim against ET Power is at issue in this appeal.

. The majority attempts to justify its result by invoking this court's duty to " 'sift the circumstances surrounding1 the claim to determine the reality of the transaction for purposes of the bankruptcy proceeding." Majority Op. at 302 (citing Smith v. Robinson, 343 F.2d 793, 801 (4th Cir.1965)). There is no reason, however, to allow "sift[ing] the circumstances” to engulf even basic principles of contract law by restructuring the private contracts of non-debtors.
The majority also seeks to place the blame for Liberty’s inability to collect the full amount of its debt on the guarantee itself, which caps GTN's liability at $140 million. See id. at 303 n. 5. If GTN's liability under the guarantee were unlimited, the majority apparently reasons, Liberty could collect the full value of its claim from GTN. As a matter of contract law, the majority is correct. But, as the bankruptcy court noted, "the cap [on GTN’s liability in its contract with Liberty is] no impediment to Liberty’s right to be paid in full from all sources” where the debtors are jointly and severally liable for the principal debt. Nat'l Energy & Gas Transmission, Inc., No. 03-03104, at *8.